NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

RICKSON LIM, a single man, *Plaintiff/Appellant*,

*v.*

THERESA E. GILLIES and JOHN DOE GILLIES, wife and husband;
ARIZONA HOME TEAM, L.L.C., *Defendants/Appellees*.

No. 1 CA-CV 13-0478
FILED 10-07-2014

---

Appeal from the Superior Court in Maricopa County
No. CV2012-009198
The Honorable Randall H. Warner, Judge

**AFFIRMED**

---

COUNSEL

Robert F. Gehrke, Attorney at Law, Phoenix
By Robert F. Gehrke
*Co-Counsel for Plaintiff/Appellant*

Michael James Wicks, Attorney at Law, Phoenix
By Michael J. Wicks
*Co-Counsel for Plaintiff/Appellant*

Elardo, Bragg, Appel & Rossi, P.C., Phoenix
By Michael A. Rossi and Rachel A. DaPena
*Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

Presiding Judge Margaret H. Downie delivered the decision of the Court, in which Judge Andrew W. Gould and Judge Samuel A. Thumma joined.

---

**D O W N I E**, Judge:

**¶1**        Rickson Lim appeals the superior court's grant of summary judgment to Theresa E. Gillies and Arizona Home Team, L.L.C. For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY[1]

**¶2**        This case arises out of an injury that Lim, a licensed real estate agent, suffered at a property owned by Fannie Mae and listed for sale with the Arizona Regional Multiple Listing Service, Inc. ("MLS") by Fannie Mae's exclusive listing agent, Arizona Home Team.  Gillies, an employee of Arizona Home Team, was the designated broker and listing agent for the property.

**¶3**        Lim and his clients entered the property through the back door, which opened into the garage.[2]  Neither Gillies nor any other representative of Arizona Home Team was present.  Lim was unaware there was a mechanic's pit in the floor of the garage and, after taking a few steps, fell into the pit.  Prior to the visit, Lim's business partner, Tram Chu, viewed the MLS listing, which included photographs of the mechanic's pit. According to Ms. Chu, the photos appeared to show a rug on the garage floor.  The MLS listing did not state there was a mechanic's pit on the property.

---

[1]        On appeal from summary judgment, we view the facts in the light most favorable to the non-moving party. *Comerica Bank v. Mahmoodi*, 224 Ariz. 289, 291, ¶ 13, 229 P.3d 1031, 1033 (App. 2010).

[2]        The parties dispute whether Lim retrieved the key from the MLS lockbox available to licensed realtors or whether Gillies gave Lim's partner the code for a non-MLS lockbox used by the company Fannie Mae employed to maintain the property.  That factual dispute is not material to our analysis.

¶4            Lim sued Gillies and Arizona Home Team (collectively, "Seller's Agents") for negligence. After an opportunity for discovery, Seller's Agents moved for summary judgment, arguing they owed Lim no duty of care because they neither owned nor possessed the property. The superior court agreed and entered judgment for Seller's Agents. Lim timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1).

## DISCUSSION

¶5            We review the entry of summary judgment *de novo*, viewing the evidence and reasonable inferences therefrom in the light most favorable to the party opposing the motion. *Andrews v. Blake,* 205 Ariz. 236, 240, ¶ 12, 69 P.3d 7, 11 (2003). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a); *see also Orme Sch. v. Reeves,* 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990) (Summary judgment is proper "if the facts produced in support of the claim . . . have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim.").

¶6            "To establish a claim for negligence, a plaintiff must prove four elements: (1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Gipson v. Kasey*, 214 Ariz. 141, 143, ¶ 9, 150 P.3d 228, 230 (2007). Whether a duty exists is a threshold issue and a question of law that we review *de novo*. *Id.* at ¶ 11, 150 P.3d at 230; *Diaz v. Phx. Lubrication Serv., Inc.*, 224 Ariz. 335, 338, ¶ 12, 230 P.3d 718, 721 (App. 2010).

¶7            A duty is an "obligation, recognized by law, which requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm." *Gipson*, 214 Ariz. at 143, ¶ 10, 150 P.3d at 230. A duty "may arise from a special relationship based on contract, family relations, or conduct undertaken by the defendant, or may be based on categorical relationships recognized by the common law, such as landowner-invitee." *Delci v. Gutierrez Trucking Co.*, 229 Ariz. 333, 336, ¶ 12, 275 P.3d 632, 635 (App. 2012). Public policy found in state statutory law and the common law may also be used to determine the existence of a duty. *Gipson*, 214 Ariz. at 146 n.4, ¶ 24, 150 P.3d at 233 n.4.

**¶8** According to Lim, three bases exist for imposing a duty on Seller's Agents: (1) as possessors of the property; (2) as agents of the property's possessor; and (3) under a theory of general tort liability. We address each assertion in turn.

## I. Seller's Agents Did Not Possess the Property

**¶9** Arizona recognizes a special relationship between an owner or possessor of land and an invitee and imposes an affirmative duty on the owner/possessor to make the premises safe for the invitee's use. *Markowitz v. Ariz. Parks Bd.,* 146 Ariz. 352, 355, 706 P.2d 364, 367 (1985), *superseded on other grounds by* A.R.S. § 33-1551; *Nicoletti v. Westcor, Inc.*, 131 Ariz. 140, 142-43, 639 P.2d 330, 332-33 (1982); *Shannon v. Butler Homes, Inc.*, 102 Ariz. 312, 316-17, 428 P.2d 990, 994-95 (1967).[3]

> A possessor of land is:
>
> (a) a person who is in occupation of the land with intent to control it or
>
> (b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or
>
> (c) a person who is entitled to immediate occupation of the land, if no other person is in possession under Clauses (a) and (b).

Restatement (Second) of Torts ("Restatement") § 328E; *see also Tostado v. City of Lake Havasu*, 220 Ariz. 195, 201, ¶ 28, 204 P.3d 1044, 1050 (App. 2008); *Clarke v. Edging*, 20 Ariz. App. 267, 272, 512 P.2d 30, 35 (1973), *abrogated on other grounds as recognized in Piccola ex rel. Piccola v. Woodall*, 186 Ariz. 307, 921 P.2d 710 (App. 1996).

**¶10** In seeking summary judgment, Seller's Agents submitted evidence that they did not own, control, occupy, maintain, or manage the property and that their only connection to the property was as a listing

---

[3] An invitee is one who enters premises held open to the public or for a purpose related to the landowner's business. *Bellezzo v. State*, 174 Ariz. 548, 550 n.3, 851 P.2d 847, 849 n.3 (App. 1992); Restatement (Second) of Torts § 332 (1965). It is undisputed that Lim was a business invitee.

agent making it available to prospective buyers. Lim did not controvert this evidence but claimed the exclusive nature of the listing agreement with Fannie Mae constituted a possessory interest because it allowed Seller's Agents to control the property by restricting access through the lockbox.[4] The Restatement, however, requires occupation by the alleged possessor in addition to the element of control, *see* Restatement § 328E, and there is no evidence Seller's Agents occupied the property at any time. Given the undisputed evidence that Seller's Agents did not own or occupy the property, were not responsible for maintaining it, and had no right to immediately possess it, Lim failed to raise a material question of fact about whether Seller's Agents possessed the property.

**¶11** We are unpersuaded by cases Lim cites from other jurisdictions, finding a material issue of fact about whether a real estate agent "possess[ed]" a property listed for sale, as those cases are factually and legally distinguishable. In *Jarr v. Seeco Construction Co.*, 35 Wash. App. 324, 325 (1983), the defendant real estate agent was present and conducting an open house when the plaintiff was injured. The agent admitted he was "in complete charge of the open house and had the responsibility to control prospective purchasers viewing the property," and conceded the agent was a possessor of land for purposes of premises liability. *Id*. at 329; *see also Coughlin v. Harland L. Weaver, Inc.*, 103 Cal. App. 2d 602, 606 (1951) (evidence sufficient to establish that seller's agent, who was showing premises when plaintiff was injured, was a possessor for purposes of premises liability). Moreover, the California Court of Appeal determined in *Hall v. Aurora Loan Services LLC*, 215 Cal. App. 4th 1134 (2013), that a seller's agent owed a duty to a visitor to disclose a concealed dangerous condition, relying, in part, on a California statute requiring all people to use ordinary care to prevent injury to others. *Id*. at 1139. Arizona has no similar statute.

---

[4] Lim also asserted the Fannie Mae listing agreement created a duty because it required Seller's Agents to "take all appropriate precautions to ensure the health and safety of [themselves], [their] employees and anyone who, in any way, works for [them]." We reject Lim's suggestion he worked for Seller's Agents because they stood to benefit from any sale arising from his showing of the property to his clients.

## II. The Fact Seller's Agents Were Agents of the Property's Possessor Did Not Create a Duty

¶12 Lim next argues Seller's Agents owed him a duty of care because they were acting on behalf of the property's possessor, Fannie Mae. Restatement § 383 provides:

> One who does an act or carries on an activity upon land on behalf of the possessor is subject to the same liability, and enjoys the same freedom from liability, for physical harm caused thereby to others upon and outside of the land as though he were the possessor of the land.

¶13 We applied § 383 in *Nguyen v. Nguyen*, 155 Ariz. 290, 746 P.2d 31 (App. 1987), a case Lim relies on heavily. In *Nguyen*, the homeowner was away when the plaintiff arrived at her residence, but the homeowner's sister, who was staying at the property, allowed the plaintiff into the home. *Id*. at 291, 746 P.2d at 32. The plaintiff slipped on a freshly waxed floor, injuring herself. *Id*. Citing Restatement § 383, we held that the sister owed the plaintiff a duty of care because she was acting on behalf of the homeowner and because she had created the risk by waxing the floor and then failing to alert the plaintiff, even though she should have known the plaintiff would not discover the peril. *Id*.

¶14 Unlike *Nguyen*, where the sister performed an activity on the property that created the harm that injured the plaintiff, Seller's Agents did not create the hazard that injured Lim and were not present when he fell. The facts of this case also distinguish it from those in which courts have held that a seller's agent *showing a house* is acting on behalf of the possessor of the property and may be liable for injuries sustained by prospective buyers. *See, e.g.*, *Jarr*, 35 Wash. App. at 328; *Smith v. Inman Realty Co.*, 846 S.W.2d 819, 823 (Tenn. App. 1992).

## III. Arizona Does Not Impose General Tort Liability

¶15 Finally, Lim urges us to adopt a more global theory of liability, imposing a duty on all persons to avoid creating situations that pose an unreasonable risk of harm to others. We have previously declined to do so, recognizing that such a fundamental change in the common law is more appropriately addressed to the Arizona Supreme Court. *See Delci*, 229 Ariz. at 337-38, ¶¶ 15-18, 275 P.3d at 636-37. We similarly decline Lim's request.

**CONCLUSION**

**¶16** For the foregoing reasons, we affirm the grant of summary judgment to Appellees. As the successful parties on appeal, Appellees are awarded their taxable costs upon compliance with ARCAP 21.



Ruth A. Willingham · Clerk of the Court
FILED: gsh